PER CURIAM:
This claim was submitted for decision based upon the allegations in the Notice of Claim and respondent's Answer.
Claimant seeks $254,000.00 for extra work that it performed under a contract with the respondent State agency for computer conversions of certain systems necessary to meet Y2K compliance. There were projects for these computer conversions being undertaken by all State agencies at this particular time. Claimant originally bid on the project for a little less than $1,300,000.00 in March 1998 at which time claimant agreed to reduce the contract bid price to $795,000.00 based upon the representations of the respondent that its own employees would be able to accomplish a portion of the conversion work necessary to bring the computer systems into Y2K compliance. A subsequent change order brought the total amount of the contract to $837,000.00. The claimant agreed to this arrangement and work on the computer system was begun in April 1998.
In August 1999, it became apparent to both parties that the Y2K conversion process would not be timely accomplished unless claimant provided the expertise necessary to accomplish this feat. There was a “fixed in stone” deadline of January 1, 2000, facing the respondent, and it was determined that unless the claimant provided additional resources to respondent, the conversion would not be completed by the critical deadline. The parties agreed that claimant would provide whatever services were needed to meet the deadline and the charges for the work would be submitted by claimant after the work was completed.
*130 As explained by respondent’s computer consultant, Mark L. Starcher, President of Scanmark, Ltd., the remediation work was to be a shared project by claimant and respondent’s employees. There were three systems to be addressed, specifically being the personal income tax system, accounts receivable system, and the business tax system. The personal income tax system was completed and put into production in December 1998. As work progressed on the Y2K compliance issues, it became apparent that additional work was necessary which was beyond the scope of the Y2K remediation effort. This work involved the library of the software itself. There were obsolete programs in the libraty and it became apparent to all concerned that it was necessary to redo completely the software library to bring it up to date. Claimant provided the expertise and employees to address the problems with the software library so that respondent now has a production library that works. All of this work was beyond the scope of the contract entered into by the parties.
As a result of the efforts of the claimant, the Y2K computer project was completed in a timely manner on November 15, 1999, the systems were tested, placed into production, and found to be Y2K compliant.
After the systems were all in order, the parties began discussions as to the amount due the claimant for the additional work that it had performed during this critical period of time. An analysis of the amount claimed to be due by the claimant was undertaken and the parties eventually agreed that the amount of $254,000.00 was fair and reasonable. Respondent’s consultant, Mr. Starcher, took an active role in the evaluation of claimant’s request for additional compensation and he was of the opinion that the amount agreed upon by the parties was reasonable. However, claimant could not be paid by respondent under the terms of the contract and claimant was advised to file this claim.
A hearing was conducted on January 19, 2000, at which time the facts and information as stated herein above were provided to the Court. At that hearing, the Commissioner for the Tax Division, Joseph M. Palmer, informed the Court that he had appeared before an interim committee of the Legislature in October 1999 to provide an update on the efforts underway to address Y2K computer issues. He informed the committee that extra work was being undertaken by claimant and a claim would be filed for consideration by this Court.
The Court, having considered all of the testimony and amount of the claim, has determined that the services performed by claimant were necessary, that respondent received the benefit of expert computer services provided by the claimant, and that the amount agreed upon by the parties is fair and reasonable. Further, the Court is of the opinion that the State of West Virginia would be unjustly enriched if claimant is not compensated for the valuable expertise that it provided respondent. The respondent, as well as our State, was in a crisis at that time because the year 2000 was fast approaching. Respondent would not have been able to process business tax receipts payable to the State, it would not have been able to *131 track its accounts receivable or determine payments made to the State or amounts due for delinquencies. This would have been a c atastrophic event for the fiscal affairs of our State. Respondent had a duty to meet the 2000 year deadline and it could not have done so without the efforts put forth by claimant. Therefore, the Court is of the opinion that an award should be made to the claimant in the amount of $254,000.00 for consideration by the Legislature during its session in 2000.
Accordingly, the Court makes an award to claimant in the amount of $254,000.00.
Award of $254,000.00.